**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LINDA S. DAY,**

                                        **Plaintiff,**

            **v.**                                        **3:05-CV-1271**
                                                          **(FJS/GHL)**

**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**
_____

**APPEARANCES**                          **OF COUNSEL**

**OFFICES OF EVA I. GUERRA**              **EVA I. GUERRA, ESQ.**
8884 Akehurst Court
White Lake, Michigan 48386
Attorneys for Plaintiff

**OFFICE OF THE UNITED**                  **WILLIAM H. PEASE, AUSA**
**STATES ATTORNEY**
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Defendant

**SOCIAL SECURITY ADMINISTRATION**        **KIMBERLY L. SCHIRO, ESQ.**
**OFFICE OF REGIONAL COUNSEL**
**REGION II**
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Plaintiff filed an application for disability insurance benefits on October 28, 2002.  *See*

Administrative Transcript ("Tr.") at 78-80.  Plaintiff's application was initially denied.  *See id.* at

60.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held

on September 24, 2003.  *See id.* at 27-59.  On November 26, 2003, the ALJ issued a decision

denying Plaintiff's application for disability benefits.  *See id.* at 12-21.  The ALJ's decision

became the Commissioner's final decision when the Appeals Council denied Plaintiff's request

for review on August 9, 2005.  *See id.* at 5-8.

On October 6, 2005, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) to

review that final decision.  In support of her argument that the Court should reverse Defendant's

decision and award her benefits, Plaintiff asserts that (1) the ALJ erred in not considering

Plaintiff's obesity in his disability determination; (2) the ALJ's residual functional capacity

("RFC") determination was not supported by substantial evidence and was affected by error of

law; and (3) the ALJ erred in finding that Plaintiff was capable of performing substantial gainful

activity.  *See* Plaintiff's Brief at 7-13.  To the contrary, Defendant contends that there is

substantial evidence in the record to support the ALJ's decision and that, therefore, the Court

should dismiss Plaintiff's complaint.


## II. BACKGROUND

**A.    Personal history**

Plaintiff was fifty-three years old at the time of the administrative hearing in 2003.  *See*

Tr. at 78.  She completed high school and college and had past relevant work experience as a

property manager and secretary.  *See id.* at 100, 105.  Plaintiff alleged disability due to

impairments resulting from childhood polio, arthritis and obesity.  *See id.* at 99; Plaintiff's Brief

at 6-10.

**B.**     **Medical evidence in the record**

*1. Treating and examining physicians*

Dr. Patrick O'Connell at Sentara Virginia Beach General Hospital performed right ankle arthrodesis bone graft surgery, which involved drilling into the ankle and grafting bone into the drill site, on Plaintiff on November 2, 2001.  *See* Tr. at 133-35.  Dr. O'Connell noted that Plaintiff had a "longstanding history of right ankle pain."  *See id.* at 133.  This pain was apparently secondary to a bone spur and arthritis.  *See id.* at 154.  At the follow-up on November 16, 2001, Dr. O'Connell noted that the incision was well-healed.  *See id.* at 202.  During late November and December of 2001, the wound site showed some opening; and on December 24, 2001, Dr. O'Connell noted that the "wound [was] not really healed completely yet but [was] certainly no worse."  *See id.* at 197-99.  When the wound had not healed by January 14, 2002, Dr. O'Connell discussed possible surgical debridement with Plaintiff.  *See id.* at 194.

Plaintiff was admitted to the hospital again on January 22, 2002, for complications arising from infection of the surgery site.  *See id.* at 136-49.  Upon admission, Plaintiff complained of pain in her right ankle, but otherwise physical examination was normal.  *See id.* at 139.  On January 25, 2002, the date of discharge, Dr. John Alspaugh recorded that Plaintiff "had extreme amount of pain, much more than usual," but he stated that he was "sure it [was] nothing more than her own biologic tendency and perception of discomfort."  *See id.* at 136.  With treatment, the infection was resolving.  *See id.*

Plaintiff was admitted to Maryview Medical Center on January 28, 2002, for swelling of the left upper extremity.  *See id.* at 150-69.  She was diagnosed with deep vein thrombosis of the left upper extremity and a chronic non-healing ulcer on the right foot, with history of cellulitis.

-3-

*See id.* at 151.  Upon physical examination, Plaintiff's left upper extremity was slightly swollen and a slight erythema was noted over the inner aspect; the right upper extremity was fairly normal.  *See id.* at 155.  Plaintiff's right foot showed a non-healing scar area.  *See id.*  Otherwise, the physical examination was normal.  *See id.*  Plaintiff was discharged on February 2, 2002.  *See id.* at 150.

Plaintiff presented to the Chesapeake Center for Cosmetic and Plastic Surgery on February 8, 2002, reporting that she had seen a plastic surgeon regarding her right foot but wanted to delay surgery.  *See id.* at 179.  Upon physical examination, Dr. Tad Grenga noted a desiccated fat-appearing wound on the right foot with no quality granulation or marginal epithelialazation present.  *See id.*  Dr. Grenga "propose[d] a period of conservative measures followed by possible debridement to ready th[e] wound for flap."  *See id.* at 180.  On February 15 and 27, 2002, Dr. Grenga noted that the wound appeared to be improving and discussed skin graft surgery with Plaintiff.  *See id.* at 177.  On March 13, 2002, Plaintiff indicated that she wished to proceed with conservative measures instead of surgery.  *See id.* at 176.  On March 27 and April 10, 2002, Plaintiff reported no new problems with pain or walking.  *See id.* at 175.  Dr. Grenga performed a skin graft surgery to close the wound flap on April 16, 2002.  *See id.* at 173-74.  Plaintiff tolerated the procedure well and was discharged from Maryview Medical Center in stable condition.  *See id.* at 173.

Plaintiff recovered well from the surgery.  *See id.* at 170-72.  She reported some aching discomfort in the wound on June 12, 2002, but objective examination of the wound site was unremarkable.  *See id.* at 170.  On July 11, 2002, Dr. O'Connell at Atlantic Orthopaedic Specialists noted that the wound had healed well and that Plaintiff would "continue activities as

tolerated."  *See id.* at 187.  On October 3, 2002, Dr. O'Connell reported that the "ankle [was] good and solid," the incision and the skin graft were well healed, and the ankle showed some mild swelling.  *See id.* at 185.

On June 2, 2003, Dr. Faith Dajao performed a consultative examination on Plaintiff.  *See id.* at 229.  Dr. Dajao noted that the incisions in the right foot were well-healed, the area of prior infection was well-healed, there was some diminished sensation in the dorsum of the foot, and sensation otherwise was intact.  *See id.*  Plaintiff reported pain in the ankle joint, for which treatment involving therapeutic footwear was discussed.  *See id.*

Dr. Dajao filled out a "Lower Extremities Questionnaire" on August 11, 2007, on which she indicated that Plaintiff had a moderately severe impairment affecting her ability to function. *See id.* at 215.  Dr. Dajao indicated that Plaintiff could occasionally – 0 to 33% of the time – maintain attention and concentration sufficient to complete tasks in a timely manner, experienced swelling of the lower extremities, and needed to elevate her leg at or above waist level for two or more hours in an eight-hour workday.  *See id.* at 215-16.  In a "Rest Questionnaire," Dr. Dajao opined that Plaintiff required complete freedom to rest frequently without restriction, stating that Plaintiff needed to lie down frequently and elevate her leg.  *See id.* at 217.  Finally, Dr. Dajao completed a "Pain Questionnaire" on August 11, 2003, on which she indicated that Plaintiff had a moderately severe impairment which resulted in frequent interference with Plaintiff's ability to maintain attention or concentration sufficient to complete tasks in a timely manner.  *See id.* at 218.

### *2. Non-examining physician*

Dr. Robert Castle, a non-examining state-agency physician, completed a physical RFC assessment on February 25, 2003. *See* Tr. at 207-13. He found Plaintiff able to lift twenty pounds occasionally and ten pounds frequently; stand, walk, and/or sit for about six hours in an eight-hour workday; and push and/or pull to the extent indicated by her lifting and carrying restrictions. *See id.* at 208. Dr. Castle noted Plaintiff's childhood history of polio and ongoing complaint of arthritis. *See id.* He opined that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. *See id.* at 209. He did not indicate that Plaintiff had any manipulative, visual, communicative or environmental limitations. *See id.* at 210-11. In support of his opinion, he cited evidence noting that Plaintiff's right foot wound site was well-healed. *See id.* at 209. Additionally, he noted that Plaintiff reported being able to drive, to go shopping, to go to church, to visit with friends, to prepare meals, and to perform household chores. *See id.* at 212. Dr. Castle found Plaintiff to be partially credible. *See id.*

### III. DISCUSSION

**A.      Disability determination**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

physical or mental impairment or impairments [must be] of such

-6-

> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work. . . .

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and

416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental
> ability to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled
> without considering vocational factors such as age, education, and
> work experience . . . . Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional capacity to
> perform his past work.  Finally, if the claimant is unable to perform
> his past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps.  *See Berry*,

675 F.2d at 467.  If the plaintiff meets this burden, the burden then shifts to the Commissioner to

prove the final step.  *See id.*

**B.      Scope of review**

In reviewing the Commissioner's final decision, a court must determine whether the Commissioner applied the correct legal standards and whether there is substantial evidence in the record as a whole to support the decision. *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)) (other citations omitted). In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports his decision. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citation omitted). A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991) (citations omitted). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quotation omitted). "It is more than a mere scintilla or a touch of proof here and there in the record." *Id.*

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Id.* (citations omitted). "However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision." *Lewis v. Comm'r of Soc. Sec.*, No. 6:00 CV 1225, 2005 WL 1899399, *1 (N.D.N.Y. Aug. 2, 2005) (citations omitted).

In the present case, the ALJ found that (1) Plaintiff met the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through the date of the decision; (2) Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability; (3) Plaintiff's right ankle arthritis requiring arthrodesis was a severe impairment under the regulations; (4) this impairment did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (5) Plaintiff retained the RFC to sit for prolonged periods of time, stand and walk up to two hours in an eight-hour workday, and lift weight of up to ten pounds occasionally; (6) Plaintiff was not fully credible; and (7) Plaintiff was able to perform her past relevant work as a secretary. *See* Tr. at 20-21. Based upon these conclusions, the ALJ directed a finding of nondisability. *See id.*

As noted, Plaintiff takes issue with a number of the ALJ's findings and his ultimate conclusion of nondisability. The Court will address each of Plaintiff's arguments in turn.

### *1. Obesity*

Plaintiff asserts that the ALJ erred in determining that her impairments did not meet or medically equal a listed impairment of 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* Plaintiff's Brief at 6-10. Specifically, Plaintiff argues that the ALJ's failure to consider her obesity in combination with her other impairments constituted reversible error. *See id.* Plaintiff did not allege obesity as an impairment until she filed her brief in this case.

SSR 02-1p addresses the evaluation of obesity in Social Security cases and dictates that, although obesity is not in itself a disability, it can be considered a severe impairment that affects

the disability analysis "when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  2000 WL 628049, *4 (SSA 2000).  However, "'there is no obligation on an ALJ to single out a claimant's obesity for discussion in all cases.'"  *Mancuso v. Comm'r of Soc. Sec. Admin.*, No. 1:06-CV-930, 2008 WL 656679, *5 (N.D.N.Y. Mar. 6, 2008) (quotation and other citations omitted); *see also Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

In this case, there is no evidence that Plaintiff's obesity – alone or in combination with other impairments – had any effect on her ability to perform work-related activities.  Although examining physicians infrequently cited Plaintiff's obesity, they never discussed her obesity as a contributing factor for any of her impairments.  *See* Tr. at 138, 159-60.  Moreover, the bulk of the medical records do not even mention Plaintiff's obesity.  *See id.* at 155, 170, 173-74, 176-79, 185, 187-88, 190-91, 194-99, 202-03.  Since the medical evidence does not indicate that Plaintiff's obesity was a factor that either treating or examining sources considered significant to Plaintiff's ability to perform work-related activities, the Court determines that the ALJ did not err by not specifically addressing Plaintiff's obesity.

### 2. Residual Functional Capacity; Treating Physician Rule

Plaintiff argues that the ALJ's RFC determination was based on insubstantial evidence and was affected by error of law.  *See* Plaintiff's Brief at 10-13.  RFC is what a claimant is capable of doing despite her limitations.  *See* 20 C.F.R. § 404.1545(a).  In rendering an RFC determination, the ALJ must consider objective medical facts and diagnoses and medical

opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and

descriptions of other limitations. *See* 20 C.F.R. § 416.945; *Martone v. Apfel*, 70 F. Supp. 2d 145,

150 (N.D.N.Y. 1999).  An ALJ must specify the functions that a plaintiff is capable of

performing and may not simply make conclusory statements regarding a plaintiff's capacities.

*See Verginio v. Apfel*, No. 97-CV-456, 1998 WL 743706, *3 (N.D.N.Y. Oct. 23, 1998); *LaPorta*

*v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (citation omitted).

        As noted above, the ALJ found that Plaintiff retained the RFC to sit for prolonged periods

of time, stand and walk up to two hours in an eight-hour workday, and lift weight of up to ten

pounds occasionally.  *See* Tr. at 20.  This is consistent with an RFC for the full range of

sedentary work.[1]  Plaintiff argues that this finding was not based on substantial evidence.  *See*

Plaintiff's Brief at 10.  To the extent that Plaintiff bases this argument on the contention that her

obesity would place her within the requirements of a listed impairment, the Court has already

found that the ALJ properly determined that Plaintiff's impairments did not meet a listing for this

reason.

        Plaintiff also points to the opinion of Dr. Faith Dajao, who stated that Plaintiff needed to

elevate her legs at waist level or above for two hours or more in an eight-hour workday.  *See* Tr.

at 216.  The ALJ considered this opinion in his decision and decided not to give it controlling

---

        [1] To find an RFC for sedentary work, the Commissioner must find that an individual is
able to lift at least ten pounds at a time or occasionally lift and carry articles like files, ledgers,
and small tools.  *See* 20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 374185, *3 (1996).  An
individual must be able to sit for at least six hours, with only routine breaks.  *See* SSR 96-9p,
1996 WL 374185, at *6.  A morning break, a lunch period, and an afternoon break at
approximately two-hour intervals constitute routine breaks.  *See id.*; *see also Halloran v.
Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (noting that sedentary work does not require an
individual to remain motionless for six hours).  An individual must also be able to walk and
stand for up to two hours.  *See* SSR 96-9p, 1996 WL 374185, at *6.

weight, noting that it was inconsistent with Dr. Dajao's own treatment notes, the medical record

as a whole, and Plaintiff's testimony about her daily activities.  *See id.* at 19.  The Court finds that

substantial evidence supports the ALJ's decision.  In her treatment notes, which consisted of only

one consultative examination, Dr. Dajao recorded that the incisions in Plaintiff's right foot were

well-healed, the area of prior infection was well-healed, there was some diminished sensation in

the dorsum of the foot, and sensation otherwise was intact.  *See id.* at 229.  Although Plaintiff

reported subjective complaints of pain, Dr. Dajao did not note any objective findings to that

effect.  *See id.*

     Additionally, the treatment records of other physicians indicated that, as the ALJ found,

Plaintiff's examinations yielded generally normal to mild results.  For instance, Dr. Grenga's

treatment notes documented the right foot wound's progress of healing, noting that Plaintiff

suffered no problems in ambulation; and Dr. O'Connell consistently reported that the wound site

was healing well.  *See id.* at 170-77, 179-80, 185, 187.  Finally, Plaintiff reported daily activities

that included cooking, doing laundry, watching television, reading, surfing the internet, shopping

with a motorized cart, camping, and sewing.  *See id.* at 41-46, 48.  Thus, the Court concludes that

the ALJ's decision was supported by substantial evidence in the record, which tended to

contradict Dr. Dajao's restrictive opinion.  The Court further finds that the ALJ's RFC finding

was a proper function-by-function assessment based on proper legal principles.


     ### 3. Past relevant work

     As a corollary to her argument regarding residual functional capacity and the treating

physician rule, Plaintiff argues that the ALJ's conclusion that she could perform her past relevant

work was improper.  This argument is based entirely on the contention that the ALJ should have given Dr. Dajao's opinion controlling weight.  *See* Plaintiff's Brief at 12-13.  However, the Court has already found that the ALJ properly weighed Dr. Dajao's opinion.

In any event, the Court finds that the ALJ's decision that Plaintiff could perform her past relevant work as a secretary was based on proper legal principles and supported by substantial evidence.  In support of his finding, the ALJ obtained testimony from a vocational expert, who testified that Plaintiff's past relevant work as a secretary was semi-skilled, sedentary work.  *See* Tr. at 52.  Since this definition was consistent with his RFC finding, the ALJ determined that Plaintiff could perform her past relevant work as a secretary.  *See id.* at 20.  The ALJ is entitled to rely on vocational expert evidence in deciding whether a plaintiff retains the capacity to perform her past relevant work.  *See* 20 C.F.R. § 404.1560(b)(2).  The Court concludes that the ALJ properly used vocational expert testimony to determine that Plaintiff could perform her past relevant work as a secretary.

## IV. CONCLUSION

After carefully reviewing the entire record in this case, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

-13-

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED.**

Dated: June 3, 2008
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge